SO ORDERED.

SIGNED March 18, 2014.



_____
HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

IN RE:                                                     CASE NO. 10-80516
    NEAL GENE AYCOCK
        (Debtor)

REASONS FOR DECISION REGARDING
DENIAL OF TRUSTEE'S MOTION TO MODIFY PLAN;
DEFERRAL OF RULINGS ON APPLICATION TO APPROVE COMPROMISE,
AMENDED MOTION TO RATIFY SETTLEMENT,
AND APPLICATION TO APPOINT SPECIAL COUNSEL;
AND ORDER TO SHOW CAUSE

The following matters came before the Court on March 6, 2014:

(1) Application to Approve a Compromise (Doc. #68);

(2) Application to Approve Special Counsel (Doc. #70);

(3) Amended Motion to Ratify Settlement with Exhibits (Docs. #78-80); and

(4) Motion to Modify Plan filed by the Chapter 13 Trustee (Doc. #82).

At docket call, counsel for the debtor and for the Chapter 13 Trustee agreed to continue all of these pending motions to April 17, 2014. Counsel for the Trustee having filed a Memorandum in Support of the Motion to Modify, the Court permitted counsel to the debtor time to file a brief in support of the debtor's Objection to the Motion to Modify Plan. Following a *sua sponte* review of the case, permission for such brief is RESCINDED and an Order to Show Cause shall enter to address why the case should not be converted to one under Chapter 7.

*History of the Case*

The petition and original plan in this case were filed on April 12, 2010. The First Amended Plan was confirmed on September 15, 2011, requiring a monthly plan payment of $370, but yielding no amount payable to the unsecured class of creditors. (Docs. #3,30.) Both the original and amended plan are silent as to the disposition of any post-petition acquired property of the estate, therefore, under 11 U.S.C. §1327(b), the confirmed plan "vests all property of the estate in the debtor."

Although the record reflects that on or about April 6, 2011, the debtor was involved in some kind of accident resulting in personal injury (*See* Doc. #80), no significant pleadings were filed until May 29, 2013, when debtor filed a Second Amended plan, but withdrew same on May 31, 2013, and that day filed a Third Amended Plan, proposing to increase the monthly plan payment to $725 to account for post-petition arrearage to a secured creditor and a priority tax claim, but still paying 0% to the unsecured creditors. (Docs. #47,49,50.) The Chapter 13 Trustee objected to the Third Amended Plan on the basis that the debtor had not filed Amended Schedules I and J to account for the feasibility of the increased plan payment. At the confirmation hearing, debtor was permitted fifteen days to file Amended Schedules I and J, anticipating that upon compliance, the amended plan could be confirmed without a further hearing. (Doc. #56.) The debtor did not file Amended Schedules. In response, the Chapter 13 Trustee filed an *ex parte* Motion to Dismiss for failure of the debtor to comply with an Order of the Court, which was granted, dismissing the case on October 7, 2013.

The debtor filed Motions to Reinstate the case and to Prepay the Base [the total amount due under the confirmed plan], on November 13, 2013, and set same for a hearing on December 5, 2013. Four days later, on November 19, 2013, debtor also filed an Amended Schedule B, listing thereon "Other personal property of any kind not already listed: Post Petition Accident," with a current value listed as "Unknown." (Doc. #65.) This Amendment was not noticed pursuant to F.R.B.P. 1009(a).

At the December 5, 2013 hearing, counsel to the debtor and counsel to the Chapter 13 Trustee announced they would submit an Agreed Order of Reinstatement of the case. Meanwhile, debtor withdrew the Third Amended Plan, and filed the pending Application to Approve a Compromise and Motion to Appoint Special Counsel on December 23, 2013. Neither the Application nor the Motion sets forth the terms of the settlement. The Order of Reinstatement, which was signed by the debtor, his counsel, the Chapter 13 Trustee and then by the Court on

2

December 30, 2013, established that "all requirements have been met by the debtor(s), and the Trustee having consented to reinstatement. . . The case is REINSTATED subject to the following conditions: Should debtor(s) fail to pay the base balance owed to the Chapter 13 Trustee within 60 days of the date of this Order, then the Trustee can submit an Ex Parte Motion for Dismissal, with a 109(g) finding." (Doc. # 72.) No party disputes that the debtor had already paid the Chapter 13 Trustee the base balance due on October 17, 2013. (Docs. #68,87.)

On January 8, 2014, debtor filed the pending Amended Motion to Ratify the Settlement, and therein, for the first time, discloses in full, in the Exhibits filed therewith, the fact that on April 6, 2011, the debtor was involved in an accident giving rise to a personal injury cause of action, for which, debtor had obtained counsel (Mr. Craig Jones and Mr. Phillip Terrell) and pursued a settlement in excess of a total of four million dollars. (Docs. #78-80.) In fact, The Settlement Agreement is date July 10, 2013, four months before the debtor filed Amended Schedule B, and in detail, shows that the debtor received $1,470,282.53 in immediate funds and $1,000,079.00 in a structured settlement. (Docs. #79-80.) The date of the settlement reflects that debtor did not accurately and truthfully disclose the value of the asset at the time he filed Amended Schedule B and listed the value of that asset as "unknown."

*Law and Application*

When the Chapter 13 Trustee signed the Agreed Order of Reinstatement, the base amount contemplated by that Order and the confirmed plan had already been paid in full and the case was Reinstated. The Motion to Modify the Plan was filed on January 30, 2014, 31 days after the Agreed Order of Reinstatement was entered on December 30, 2013, and well after the "completion of payments" per the confirmed plan was tendered on October 17, 2013. Therefore, the Motion to Modify under 11 U.S.C. §1329(a) is untimely filed and must be denied. *Cf. In re Meza*, 467 F.3d 874 (5th Cir. 10/16/2006)(debtor's payment of the base after the Chapter 13 Trustee a Motion to Modify plan, but before the hearing thereon, did not render the Trustee's motion untimely).

Nevertheless, upon reviewing the record of this case, it is clear that this debtor has failed to adequately disclose his post-petition, post-confirmation acquired asset as required by recent jurisprudence within this Circuit, *In re Flugence*, 738 F.3d 126 (5th Cir. 11/22/2013), the pertinent facts of which are very similar to the facts of this case. In *Flugence*, the debtor filed a case under Chapter 13 in 2004, and after initial confirmation of a plan, incurred a personal injury cause of action in 2007. Though Flugence sued the tortfeasors in March of 2008, she never disclosed the cause of

3

action even after filing amended plan. In the bankruptcy case, the amended plan was confirmed, all plan payments were made, the debtor received the discharge and the case was closed. Thereafter, the personal injury defendants moved to reopen the case and have the Bankruptcy Court determine that the debtor was judicially estopped from pursuing the personal injury claim on her own behalf since she failed to disclose the cause of action in the bankruptcy case. The Court affirmed the application of judicial estoppel as to the debtor, but further held, citing *Reed v. City of Arlington*, 650 F.3d at 573, that the Chapter 13 Trustee was not estopped and "may pursue the claim without any limitation not otherwise imposed by law." *In re Flugence*, 738 F.3d at 131, *citing Reed v. City of Arlington*, 650 F.3d 571, 573 (5th Cir. 2011).[1]

There is no party here asserting the judicial estoppel argument. While the facts are similar here, they are not identical.[2] In *Flugence*, the Court noted that the confirmed Chapter 13 Plan

---

[1] Although the *Flugence* Court held that the trustee in a Chapter 13 case could pursue the post-petition acquired cause of action, it did so citing *Reed*, which dealt with a Chapter 7 debtor and the right of the Chapter 7 trustee to pursue the cause of action. There is an important distinction there that is not made, however, that is, that the enumerated powers of the Chapter 7 Trustee differ from those of the Standing Chapter 13 Trustee. A Chapter 7 Trustee, under §704(a)(1), §323, and F.R.B.P.6009 may "sue and be sued" and "the trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor. [Conversely,] [t]he trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor." *Hays & Co. v. Merrill Lynch, et al.*, 885 F.2d 1149, 1154 (3d Cir. 1989), *citing* Collier on Bankruptcy, ¶ 323.02[4]. The Chapter 13 Trustee though, under 11 U.S.C. §1302, does not have the power under §704(a)(1) to "reduce to money the property of the estate," does not "stand in the shoes of the debtor," and is specifically restricted from exercising control of property of the estate under 11 U.S.C. §1303, particularly when §1327(b) is applicable and the post-confirmation property of the estate vests in the debtor at confirmation. So, although this Court follows the clear ruling of the 5th Circuit in *Flugence*, its practical application presents a problem in that it requires that a Standing Chapter 13 Trustee to act outside of the sphere of authority granted under §1302. Nevertheless, the possibility of conversion in this particular case, discussed *infra*, would moot the implications of this distinction.

[2] This Court does not presume to answer the question not yet raised as to judicial estoppel for several reasons, including the fact that the asset, if property of the estate, is one to be administered by the Chapter 7 Trustee upon conversion; but also, this Court adopts the concurring opinion of Judge Dennis in *Flugence*, which states in its entirety: "I concur in the court's opinion and judgment, but I write separately to briefly state my understanding of one point. That is, that "judicial estoppel is not governed by inflexible prerequisites or an exhaustive formula for determining its applicability, and numerous considerations may inform the doctrine's application in specific factual contexts." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir.2012) (internal quotation marks omitted); see also Reed v. City of Arlington, 650 F.3d 571, 574 (5th Cir.2011) (en banc) ("Because the doctrine is equitable in nature, it should be applied flexibly, with an intent to achieve substantial justice." (quoting 18 James Wm. Moore et al., Moore's Federal Practice § 134.31, at 73 (3d ed.2011))). Depending on the specific facts of the case, whether judicial estoppel is invoked and, if so, what is the remedy crafted may differ. See, e.g.,

provided that the post-petition acquired property of the estate did not vest in the debtor until discharge, and thus, in that case, the argument to be made for disclosure of the asset was clearer. Here, the confirmed plan is silent as to that issue, and thus, pursuant to 11 U.S.C. §1327(b), the confirmed plan "vests all property of the estate in the debtor," thus, debtor's counsel would no doubt argue that disclosure of post-confirmation acquired property is superfluous. Even so, the *Flugence* Court addressed debtors' duty to disclose:

> It may be uncertain whether a debtor must disclose assets post-confirmation.
> 
> . . .
> 
> At oral argument, Flugence's attorney stated that there is still ambiguity, because the order says property of the estate shall revest after discharge, but it is unclear whether the cause of action ever was property of the estate. Even so, our decisions have settled that debtors have a duty to disclose to the bankruptcy court notwithstanding uncertainty. The reason for the rule is obvious: Whether a particular asset should be available to satisfy creditors is often a contested issue, and the debtor's duty to disclose assets—even where he has a colorable theory for why those assets should be shielded from creditors—allows that issue to be decided as part of the orderly bankruptcy process.[4]
>
> > [FN4] *See United States v. Beard*, 913 F.2d 193, 197 (5th Cir.1990) (explaining that debtors have a "duty to disclose to the court the existence of assets whose immediate status in the bankruptcy is uncertain, even if that asset is ultimately determined to be outside of the bankruptcy estate"); *see also In re Robinson*, 292 B.R. 599, 607 (Bankr.S.D.Ohio 2003) ("[D]ebtors have the absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate. This is because the bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate." (internal quotation marks and citations omitted)).

*Gilbreath v. Averitt Exp., Inc.*, No. 09–1922, 2010 WL 4554090 (W.D.La. Nov. 3, 2010). The bankruptcy court, which is closest to the facts, operates in a zone of discretion in crafting an appropriate remedy. *Cf. In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir.1999) ("[J]udicial estoppel is an equitable doctrine, and the decision whether to invoke it within the court's discretion...."). That we affirmed the bankruptcy court's remedy here—estopping Flugence from pursuing her personal-injury claim while allowing the bankruptcy trustee to do so and requiring that any recovery by the trustee exceeding Flugence's remaining debt be refunded to the tortfeasors—does not imply that the same must be done in all cases in which a debtor fails to disclose a claim to the bankruptcy court. As our opinion does not require the same remedy in all cases, I concur." *In re Flugence*, 738 F.3d at 132.

5

*In re Flugence*, 738 F3d at 129-130.

*Flugence* therefore sets forth the binding precedent that the debtor in Chapter 13 has a continuing duty to disclose the post-confirmation acquired asset so that its status as property of or outside the estate may be determined by the Bankruptcy Court. Moreover, although it is unlikely that such an asset would be construed as property of the estate and subject to distribution absent a *timely* filed Motion to Modify and grounds therefore under §1329 when the plan silent as to post-confirmation acquired property under §1327(b), given the confirmed plan preeminence and its *res judicata* effect under *Espinosa* (*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367 (2010)), the failure of a debtor to make honest and accurate disclosures to the court, trustee and creditors carries implications beyond the possibility of judicial estoppel. Unlike in *Flugence*, where the debtor was merely silent as to the acquisition of post-petition cause of action, this debtor not only failed to adequately disclose the cause of action for more than two years, but blatantly contradicted its known value when he finally amended Schedule B to state "post petition accident" of an "unknown" value just four months after he signed a Settlement Agreement pursuant to which he was awarded over $4,000,000. Moreover, it seems disingenuous to assert in the amended motion to ratify the settlement that the $15,255 "would more than prepay the case balance of the Chapter 13 Bankruptcy" per the confirmed First Amended Plan (due to the withdrawal of the Third Modified Plan), as if such figure was happenstance, while the July 10, 2013 settlement discloses that the sum of $15,255 would be disbursed to "bankruptcy court." (Doc. #78.) Such blithe disregard for the truth was recently grounds for the §1306(a) *sua sponte* conversion in *In re Elliot*, 506 Fed.Appx.291 (5th Cir. 1/7/2013), where the debtor misrepresented his own income, marital status, household size and failed to disclose his wife's income, information regarding his books, records, current and prior business interests.[3] The United States Supreme Court even recently discussed in dicta the duty of the Bankruptcy Court to respond within the limits of the Code when faced with the pleadings of a dishonest debtor:

> Our decision today does not denude bankruptcy courts of the essential "authority to respond to debtor misconduct with meaningful sanctions." Brief for United States as Amicus Curiae 17. There is ample authority to deny the dishonest

---

[3] The loss to the creditors due to Elliot's misrepresentations was less obvious than in this case, where, in addition to the failure to truthfully disclose the value of the asset, this debtor seeks to pay a pittance to conclude the bankruptcy case and retain a sum, for which there is no colorable claim of exemption, that is approximately forty-five times the amount of unsecured debt he seeks to discharge.

6

debtor a discharge. See § 727(a)(2)-(6). (That sanction lacks bite here, since by reason of a postpetition settlement between Siegel and Law's major creditor, Law has no debts left to discharge; but that will not often be the case.) In addition, Federal Rule of Bankruptcy Procedure 9011—bankruptcy's analogue to Civil Rule 11—authorizes the court to impose sanctions for bad-faith litigation conduct, which may include "an order directing payment ... of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. Rule Bkrtcy. Proc. 9011(c)(2). The court may also possess further sanctioning authority under either § 105(a) or its inherent powers. *Cf. Chambers*, 501 U.S., at 45–49, 111 S.Ct. 2123. And because it arises postpetition, a bankruptcy court's monetary sanction survives the bankruptcy case and is thereafter enforceable through the normal procedures for collecting money judgments. See § 727(b). Fraudulent conduct in a bankruptcy case may also subject a debtor to criminal prosecution under 18 U.S.C. § 152, which carries a maximum penalty of five years' imprisonment.

But whatever other sanctions a bankruptcy court may impose on a dishonest debtor, it may not contravene express provisions of the Bankruptcy Code by ordering that the debtor's exempt property be used to pay debts and expenses for which that property is not liable under the Code.

*Law v. Siegel*, --- S.Ct. ----, 2014 WL 813702 *8 (3/4/2014).

Accordingly, pursuant to a separate Order issued this date, the debtor will be required to show cause why the case should not be converted for the reasons set forth above to one under Chapter 7; the Motion of the Chapter 13 Trustee to Modify the Plan under 11 U.S.C. §1329 will be denied as untimely filed; any rulings on the Application to Approve a Compromise (Doc. #68), the Application to Approve Special Counsel (Doc. #70) and the Amended Motion to Ratify Settlement with Exhibits (Docs. #78-80) will be deferred pending a ruling on the Order to Show Cause, and will survive conversion for the benefit of the Chapter 7 Trustee should the case be converted to one under Chapter 7.

# # #